UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

_____
                                  )

ROGER VANN SMITH,                )
                                  )

       Plaintiff,          )
                                  )

       v.                  )        Civil Action No. 06-1671 (PLF)
                                  )

CLIFFORD B. JANEY et al.,     )
                                  )

       Defendants.       )
_____)

OPINION

       This matter is before the Court on the defendants' motion for judgment on the

pleadings or, in the alternative, for summary judgment, and the plaintiff's motions for leave to

amend or correct his complaint and to re-open or extend discovery.  For the reasons stated, the

defendants' motion will be granted and all other pending motions will be denied.

I.  BACKGROUND

       The plaintiff, proceeding in forma pauperis and filing a complaint pro se, alleges

employment discrimination and sues under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et

seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., the Equal Pay

Act, 29 U.S.C. § 206(d), and 42 U.S.C. § 1981.  The plaintiff, born in 1946, is an African-

American male of "fair complexion" with diabetes and a "skeletal/back/neck disability" that

predates the events giving rise to this action.  Compl. ¶¶ 21-23; Aff. of Roger Vann Smith ¶¶ 1,7,

Nov. 18, 2008 ("Smith Aff."), *filed with* Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings or for

Summ. J. ("Opp'n").  The plaintiff was hired by the District of Columbia Public Schools

("DCPS") in January 2003 as a contract specialist at pay grade 11, and in June 2003 received an

overall performance rating of "excellent."  Compl. ¶ 7; Smith Aff. ¶¶ 6, 10.  In January 2004, the

plaintiff's position was abolished, along with three similar positions held by two black females

and one white male.  Compl. ¶ 8.  Shortly thereafter, the plaintiff was re-hired by DCPS in the

same office but in a temporary position.  Compl. ¶ 9; Smith Aff. ¶ 12.  By the end of March 2004

the plaintiff was working as a contract specialist in pay grade 12, step 1, and at the end of June

was evaluated by his supervisor for the twelve months immediately prior as being "capable of

handling large workloads," "capable of performing his duties with a minimum of assistance and

supervision," "willing to assist co-workers," "a dedicated and conscientious worker," who

produced a "satisfactory" amount of "excellent" quality work.  Compl. ¶¶ 12-14; Smith Aff.

¶¶ 13-15.

        The plaintiff, along with others in his office, was required to work one weekend at

the end of July 2004 to meet an approaching deadline.  Compl. ¶ 15; Smith Aff. ¶¶ 16, 17.  The

plaintiff worked until 3:30 p.m. on Saturday.  Smith Aff. ¶ 17.  Then, arriving a little before 9:00

a.m. on Sunday, the plaintiff and others worked without air conditioning until plaintiff started

feeling ill in mid-afternoon; he left work shortly after 4:30 p.m., looking and feeling ill.  Compl.

¶ 15; Smith Aff. ¶¶ 16, 17.  "As a result of [the plaintiff's] breakdown on [Sunday,] August 1,

2004," Smith Aff. ¶ 18, except for two days in early August, the plaintiff did not return to work

for the next twenty-one weeks, through December 13, 2004, Compl. ¶ 16.  On September 30,

2004, while the plaintiff was not working, DCPS extended plaintiff's employment as a temporary

contract specialist in pay grade 12 through September 30, 2005.  Compl. ¶ 17; Smith Aff. ¶ 19.

In mid-July 2005, the plaintiff applied for a vacant position as contract specialist

with DCPS at pay grade 13, but he was not hired for that position.  Compl. ¶¶ 37, 38.  Three

weeks later, on August 4, 2005, the position remained open.  Compl. ¶ 37.  The record does not

indicate whether the position remained open after that point.  Plaintiff avers, however, that

sometime between February 2004 and August 2005, the plaintiff's two black female, younger

colleagues whose positions had been abolished along with plaintiff's in January 2004, were hired

into permanent contract specialist positions at grade level 13, making more money than the

plaintiff was making, while allegedly doing  the same work.  Smith Aff. ¶ 25.

Although the complaint does not so state, *see* Compl. ¶¶ 54-56 (stating that

"nothing further transpired" in response to his requests regarding his employment status), it is

evident that the plaintiff's employment was extended further, because he was still working for

DCPS after September 30, 2005.  On November 17, 2005, in the context of a contractor being

over-budget and seeking additional funds, the plaintiff remarked to the contractor's female

representative, "This project is growing like your chest," a statement the plaintiff says that he did

not intend "as sexual."  Smith Aff. ¶ 31.  When the plaintiff's remark was reported to the

plaintiff's supervisor, James Armstrong, a defendant in this action, with a complaint that the

remark was sexually harassing, "an investigation was begun."  Smith Aff. ¶ 32.[1]

---

[1]  The original complaint failed to disclose this matter; it did not disclose the remark, the
complaint to the plaintiff's supervisor, or the subsequent investigation.

In late December 2005, while the plaintiff was on vacation, he sought "medical care to address the re-activation of [his] job-stress-related disabilities." Smith Aff. ¶ 33. A month later, in late January 2006, the plaintiff applied for three other contract specialist positions, including supervisory positions, with higher pay, but was not hired into any of those positions. *See* Compl. ¶¶ 42-44, 46-48, 50-52; Smith Aff. ¶ 34. While it is clear that the plaintiff was not selected for any of those positions, the record is silent as to whether the positions were filled or not. On February 3, 2006, the plaintiff was denied overtime pay. Compl. ¶ 60. Then, "[o]n or about February 15, 2006," the plaintiff was removed "from the contract workload database, causing work to stop being assigned to [him]." Smith Aff. ¶ 36. The complaint alleges that "[d]efendants[] had planned during a face-to-face meeting on February 17, 2006 to either fire plaintiff, or in the alternative, place plaintiff on suspension with or without pay." Compl. ¶ 34. On Friday, February 17, 2006, when the plaintiff was summoned to an afternoon meeting with DCPS managers — which the complaint obliquely refers to as "further . . . undue on the job harassment by defendants, especially defendants Bazemore and Armstrong," Compl. ¶ 32 — he "requested notice of the meeting's purpose and time to get counsel." Smith Aff. ¶ 37. Before the meeting commenced, the plaintiff "became ill from emotional distress and had to depart work." Compl. ¶ 32; *see also* Smith Aff. ¶ 37. The plaintiff's application for sick leave, which he submitted just prior to leaving work on February 17, was not authorized in advance, was indefinite in duration, and stated as the sole reason for the absence was "stress to neck and back." *See* Defs.' Mot. for J. on the Pleadings, or in the Alternative, Mot. for Summ. J. ("Defs.' Mot."), Ex. 3.

The plaintiff avers that on February 23 and 24, 2006, he "sent emails to the responsible supervisors informing them of my medical reasons for not reporting to work." Smith Aff. ¶ 38.  By letter dated February 24, 2006, addressed to the plaintiff at his local address, the DCPS directed the plaintiff to return to work by Tuesday, February 28, 2006 or to provide medical documentation for his absence and an expected return date.  *See* Defs.' Mot. Ex. 5.  The plaintiff received the February 24 letter on March 3, 2006.  Smith Aff. ¶ 39.  By letter dated March 3, 2006, the DCPS terminated the plaintiff's employment for abandonment of his position.  *See* Defs.' Mot. Ex. 6.  On March 6 and 7, 2006, the plaintiff "sent emails and faxes to the responsible officials of the DCPS explaining my absences [and] requesting a hearing" but "received no replies."  Smith Aff. ¶ 39.  None of the written communications from the plaintiff to the defendants was submitted for the record.

Three weeks after learning of his termination, the plaintiff filed an administrative charge of discrimination with the District of Columbia Office of Human Rights, alleging race, age, and sex discrimination.  *See* Defs.' Mot. Ex. 1.  On September 26, 2006, the plaintiff submitted this pro se complaint for filing, asserting claims not only for race, age, and sex discrimination, but also for disability discrimination, and naming as defendants Clifford Janey, Kevin Green, Glorious Bazemore, James Armstrong, Tony Demasi, and Loretta Blackwell, all of whom were employees of the District of Columbia Public Schools.  *See* Compl.  ¶¶ 1, 3.  In support of his otherwise conclusory allegations of race, sex, and age discrimination, the plaintiff has averred that one of his supervisors,

> Ms. Bazemore[,] treated her 'inner circle' differently than those
> outside it, including me, in terms of permanent status, overtime,
> pay and promotions.  The people in Ms. Bazemore's inner circle

were young black females, whereas I am a light-complected
African-American man born in 1946.  Ms. Bazemore is reported to
have remarked unfavorably on my color as appearing white.

Smith Aff. ¶ 23.

Shortly after filing his pro se complaint, the plaintiff, who earned a law degree

from Howard University in 1979, Smith Aff. ¶ 5, moved for appointed counsel.  The Court

denied his request for counsel the first and second times, but appointed pro bono counsel in

response to the plaintiff's third motion; counsel entered an appearance for the plaintiff on

November 27, 2007.[2]  Five months after pro bono counsel entered his appearance on behalf of

the plaintiff, the parties filed a joint report stating in pertinent part that "[t]he parties agree not to

file amendments to the pleadings or to join additional parties."  *See* Joint Meet & Confer

Statement, at 2 (Apr. 16, 2008).  Upon the recommendation of the parties, the Court entered a

scheduling order which, among other things:  (1) ordered that "[t]he parties will not amend the

pleadings or join additional parties," (2) set October 20, 2008 as the deadline for the close of

written and oral discovery, including experts, and (3) set a deadline of December 18, 2008 for

filing dispositive motions.  *See* Order ¶¶ 1, 8, 9 (Apr. 23, 2008).  The defendants timely filed a

dispositive motion and the plaintiff timely filed an opposition.

Despite the scheduling order and the agreement between the parties, which the

plaintiff acknowledges, the plaintiff seeks leave to amend his complaint, which defendants

oppose.  It appears that the only difference between the proposed amended complaint and the

original complaint is the substitution of the District of Columbia in the amended complaint as the

---

[2]  In the meantime, the defendants answered the complaint, the Court denied the
plaintiff's motion for judgment on the pleadings, and the United States Court of Appeals for the
District of Columbia Circuit dismissed the plaintiff's appeal from this Court's decision.

6

sole defendant for the individuals named in the original complaint.  *See* Pl.'s Mot. for Leave to File an Amended Complaint, Ex. Am. Compl.  The plaintiff also filed a motion to re-open or extend discovery, as to which the defendants have taken no position.  The motion to re-open discovery acknowledges that the parties did not diligently pursue discovery during the discovery period, and that plaintiff did not move to compel either responses to written discovery or depositions.  *See* Pl.'s Mot. to Re-open Discovery at 1-2.

## II.  DISCUSSION

### A.  Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed.R.Civ.P. 12(c).  Furthermore, where, as here,

> on a motion under . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).  As the parties had a full six months in which to conduct discovery, they have been "given a reasonable opportunity" both to develop and "to present all the material that is pertinent to the motion," and the motion will be treated as one for summary judgment.  Fed. R. Civ. P. 12(d).  For this reason, the plaintiff's motion to re-open or to extend discovery will be denied.

A court may grant a motion for summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Holcomb v. Powell,* 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell,* 433 F.3d at 895 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248).

An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248; *Holcomb v. Powell,* 433 F.3d at 895. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255; *see also Mastro v. Potomac Electric Power Co.,* 447 F.3d 843, 849-50 (D.C. Cir. 2006); *Aka v. Washington Hospital Center,* 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); *Washington Post Co. v. Dep't of Health and Human Services,* 865 F.2d 320, 325 (D.C. Cir. 1989), and a court must "eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the evidence is "merely

colorable" or "not significantly probative," summary judgment may be granted. *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. at 249-50; *see Scott v. Harris,* 550 U.S. 372, 380 (2007) ("[W]here

the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

'there is no genuine issue for trial.'") (quoting *Matsushita Electric Indus. Co. v. Zenith Radio*

*Corp.,* 475 U.S. 574, 587 (1986)). In short, to defeat summary judgment, a plaintiff must

produce more than "a scintilla of evidence to support his claims." *Freedman v. MCI*

*Telecommunications Corp.,* 255 F.3d 840, 845 (D.C. Cir. 2001).

### B.  Individual or Official Liability and Amending the Complaint

As a threshold matter, the defendants argue that the plaintiff's claims under Title

VII, the ADEA and the ADA should be dismissed because those laws do not provide for

individual liability, and the complaint named only individuals as defendants. *See* Defs.' Mot. at

1-2. The defendants are correct that there is no individual liability under Title VII, the ADEA or

the ADA. *See Howard v. Fenty,* 580 F. Supp. 2d 86, 92 (D.D.C. 2008) (noting that there is no

individual liability under either Title VII or the ADA). The defendants are silent on this score

with respect to the Equal Pay Act, which defines employer to "include[] any person acting

directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203.

The plaintiff maintains that his complaint should be construed as one against the

individuals in their official capacities, that is, as against the District of Columbia. *See* Opp'n

at 2-3.[3]  A fair reading of the complaint leads to a conclusion that the suit is not one against the

---

[3]  Plaintiff's reliance on Fed. R. Civ. P. 17(a)(3) to support his position is misplaced. That provision applies only to prosecuting in the name of the real party in interest, and has nothing to do with failing to identify the appropriate defendant.

individuals in their personal capacities, and the Court will so construe the complaint.  Because

"the government entity receive[d] notice and an opportunity to respond," the Court will construe

the complaint as one brought against only the District of Columbia.  *Kentucky v. Graham,* 473

U.S. 159, 165-66 (1985).[4]

### C.  The Plaintiff's Claim Under 42 U.S.C. § 1981

The introductory paragraph of the complaint cites 42 U.S.C. § 1981 in passing and

does not mention it again.  Therefore, the complaint has not stated a claim under Section 1981

upon which relief may be granted; it has not even clarified which clause of Section 1981 the

plaintiff means to invoke — the "contractual rights" clause or the "full and equal benefit" clause.

*See Moonblatt v. District of Columbia,* 572 F. Supp. 2d 15, 25-26 (D.D.C. 2008) (discussing the

two clauses and their differing elements).  In any case, the plaintiff has clarified that the intended

defendant is the District of Columbia, which is a municipality for purposes of an action brought

under 42 U.S.C. § 1983 to enforce a violation of 42 U.S.C. § 1981.  *See Best v. District of*

*Columbia,* 743 F. Supp. 44, 46 (D.D.C. 1990).  "A municipality may be liable under Section

1983 [only] if it is shown that the wrongdoing resulted from an unconstitutional policy, practice

---

[4]  This construction of the complaint renders the motion for leave to amend the complaint
futile, as it does no more than substitute the District of Columbia for the individual defendants.
Denial of leave to amend is warranted if the amendment would be futile.  *James Madison Ltd. v.
Ludwig,* 82 F.3d 1085, 1099 (D.C. Cir. 1996); *see also Walker v. Pharmaceutical Research and
Manufacturers of America,* 256 F.R.D. 234, 238 (D.D.C. 2009) (stating that an amended
complaint is futile if it merely restates the same facts as the original complaint . . . or could not
withstand a motion to dismiss).  Accordingly, the plaintiff's motion for leave to amend the
complaint will be denied as futile.  In light of the fact that the plaintiff and his counsel had ample
time to amend the pleading before entering into an agreement with the defendant that the
pleadings would not be further amended, the Court is disinclined to grant any motion to amend
the pleadings.  In any case, the plaintiff did not establish that justice required granting leave to
amend.

or custom promulgated or sanctioned by the municipality." *Muhammad v. District of Columbia,* 584 F. Supp. 2d 134, 137 (D.D.C. 2008).  There is no municipal liability where the complaint does not allege facts to establish that any of the alleged racially discriminatory injuries resulted from the municipality's custom, policy, usage, acts or edicts that "may fairly be said to represent official policy." *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694 (1978); *see also Pembaur v. Cincinnati,* 475 U.S. 469, 481 (1986) ("Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered."); *Federation of African American Contractors v City of Oakland,* 96 F.3d 1204, 1215 (9th Cir. 1996) (holding that the 1991 amendments to Section 1981 "preserve[d] the 'policy or custom' requirement" in suits against municipalities).  The complaint in this case does not allege that plaintiff's termination or non-selection for hire or promotion was pursuant to a custom or policy of the District of Columbia.  Therefore, because the defendants do not address the claim at all, on its own authority under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court will dismiss plaintiff's Section 1981 claim for failure to state a claim upon which relief may be granted.

### D.  The Plaintiff's ADA, Title VII, and ADEA Claims

A plaintiff seeking to file a civil action for disability discrimination under the ADA is required to exhaust his administrative remedies first.  29 U.S.C. § 626(d) (requiring an ADA plaintiff to file a formal charge with the EEOC before filing a lawsuit); *see Jones v. University of District of Columbia,* 505 F. Supp. 2d 78, 81-82 (D.D.C. 2007) (dismissing ADA

claims for failure to exhaust administrative remedies).[5]  It is beyond genuine dispute that the

plaintiff did not exhaust his administrative remedies with respect to his claim of disability

discrimination.  The plaintiff's administrative charge did not identify disability as a basis for his

claim.  *See* Defs.' Mot. Exs. 1, 2 (showing only discrimination based on color, age, and race).

The plaintiff nonetheless argues that his administrative claims should be interpreted to include a

charge based on disability because of things he stated in the administrative Charge Questionnaire.

*See* Opp'n at 5 & Ex. 1.[6]  He further argues that he "should not be penalized for the EEOC's

recasting of his claims."  Opp'n at 6.  There is no evidence in the record, however, to support the

plaintiff's suggestion that his charge was recast, or that he should not be held responsible for the

charges that he, a contract specialist and lawyer, authorized by signing and dating.  Accepting the

administrative charge at face value, the record establishes that the plaintiff did not exhaust his

administrative remedies with respect to his disability claim before bringing this civil action.

Therefore, he cannot prevail on any disability claim here.

    As it applies to this case, Title VII "establishes two elements for an employment

discrimination case:  (i) the plaintiff suffered an adverse employment action (ii) because of the

employee's race . . [or] sex."  *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C.

---

  [5]  Exhaustion of administrative remedies is required under Title VII and the ADEA as well.  *See* 42 U.S.C. §§ 2000e-5(e)(1) & (f)(1) (identifying the administrative procedures that must precede filing a civil action in district court under Title VII); *see also Bell v. Redding,* 539 F. Supp. 2d 423 (D.D.C. 2008) (dismissing Title VII claim for failure to exhaust mandatory administrative remedies); *Cruz-Packer v. District of Columbia,* 539 F. Supp.2d 181, 189 (stating that an ADEA plaintiff who is not a federal employee is obligated to file a formal charge with the EEOC before filing a lawsuit, but is not required to receive a right to sue letter before filing the civil action).  The defendants did not raise an issue with respect to exhaustion of the Title VII and ADEA claims, and the Court therefore does not reach those issues here.

  [6]  The exhibit appended does not substantiate the argument in the Plaintiff's Opposition.

Cir. 2008).  "A plaintiff must prove both elements to sustain a discrimination claim."  *Baloch v.*

*Kempthorne,* 550 F.3d 1191, 1196 (D.C. Cir.  2008).  The parties' burdens, and the central

question addressing the role of the impermissible factors apply equally to a claim for age

discrimination brought under the ADEA.  *Barnette v. Chertoff,* 453 F.3d 513, 515 (D.C. Cir.

2006).

### 1.  The Plaintiff's Employment Termination Claims

In a case

> where . . . an employer has asserted a legitimate,
> non-discriminatory reason for [an adverse employment] decision,
> . . . in considering an employer's motion for summary judgment or
> judgment as a matter of law, . . . the district court must resolve one
> central question:  Has the employee produced sufficient evidence
> for a reasonable jury to find that the employer's asserted
> non-discriminatory reason was not the actual reason and that the
> employer intentionally discriminated against the employee on the
> basis of race . . . [or] sex . . .?

*Brady Office of the Sergeant at Arms*, 520 F.3d at 494.  In this case, the defendants have offered

a legitimate, non-discriminatory reason for terminating the plaintiff's employment, namely, the

plaintiff's unauthorized absence from work.  *See* Defs.' Mot. Exs. 5, 6. The complaint and the

plaintiff's affidavit (the plaintiff did not file deposition excerpts) offer only conclusory

boilerplate assertions that defendants' stated reason for termination was a pretext.  *See* Compl.

¶ 33 ("Defendants conspired to intentionally create a false pretext . . . to terminate plaintiff's

employment[, the] . . . alleged false pretext being that plaintiff had abandoned [his] position as a

Contract Specialist . . . .") (punctuation altered); Smith Aff. ¶¶ 36 ("[M]y supervisors removed

me from the contract workload database, . . . [which] was a pretext for discrimination against me

on the basis of my age, color, sex, and disabilities."), 39 ("The grounds recited in the [termination] letter, job abandonment, were a pretext for discriminating against me on the basis of my age, disabilities, sex, and color.").  Even dressed up as statements made under oath, these conclusory assertions, devoid as they are of factual content, are but "mere[] allegations" upon which the plaintiff may not rely.  Fed. R. Civ. P. 56(e)(2).  A plaintiff who "offers only mere speculation to refute the employer's proffered legitimate, non-discriminatory reason fails to create a genuine issue of material fact to avoid summary judgment."  *Moncada v. Peters,* 579 F. Supp. 2d 46, 55 (D.D.C. 2008) (internal quotation marks and alterations omitted).

On this record, the plaintiff has not offered "specific facts showing that there is a genuine issue" with respect to the legitimacy of the defendants' termination decision, as he must in order to defeat a summary judgment motion.  Fed. R. Civ. P. 56(e)(2).  He has not shown that his absence from work in February 2006 either was authorized or reasonably should have been authorized, or that the plaintiff was treated differently from others who had taken unauthorized leaves.  *Compare Brady v. Office of the Sergeant at Arms*, 520 F.3d at 494 (noting that a plaintiff may attempt to show that the employer treated other employees differently with respect to that action or that the employer is lying or fabricating evidence).  Thus, the uncontroverted record facts establish that the plaintiff was terminated for his unauthorized leave and subsequent failure to return to work or to produce documentation showing that his leave was justified.  On the record before this Court, there is not "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee" on the basis of race, sex or age.  *Brady v. Office of the Sergeant at Arms*, 520 F.3d at 494.  Therefore, the Court will grant summary

14

judgment for the defendants on the discrimination claims arising from the plaintiff's employment termination.

### 2.   The Plaintiff's Failure to Hire/Promote Claims

The plaintiff has alleged that the defendants failed to hire or promote him because of his sex, race or age.  *See* Compl. ¶¶ 37-40, 42-44, 46-48, 50-52.[7]  At the summary judgment stage in a case where there is no direct evidence of discrimination and the defendant has not offered a legitimate, non-discriminatory reason for the decision, claims can survive only if the plaintiff has established a prima facie case of discrimination.  *See Brady v. Office of the Sergeant at Arms,* 520 F.3d at 493 (explaining that the prima facie case requirement first set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) "'drops out of the picture'" only once the employer has articulated a legitimate, non-discriminatory reason for the action taken) (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511 (1993)).

> In a refusal-to-hire or refusal-to-promote discrimination case, the McDonnell Douglas prima facie factors are:  (i) that the employee belongs to a racial minority or other protected class; (ii) that the employee applied and was qualified for a job for which the employer was seeking applicants; (iii) despite the employee's qualifications, the employee was rejected; and (iv) after the rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualifications.

---

[7]  While the complaint alleges disability discrimination with respect to the failure to hire or promote, because the plaintiff did not timely, and now cannot timely, exhaust his administrative remedies with respect to any disability discrimination, he cannot proceed with a disability claim here.

*Brady v. Office of the Sergeant at Arms,* 520 F.3d at 493 n.1 (internal quotation marks omitted).[8]

While the burden of establishing a prima facie case is not onerous, the plaintiff bears the burden

of establishing it by a preponderance of the evidence.  *Wiley v. Glassman*, 511 F.3d 151, 155-56

(D.C. Cir. 2007).

        The plaintiff has not offered specific facts to establish that he was either qualified,

or better qualified than his competitors, for the position for which he applied.  To the contrary,

the qualifications for that position are not part of the record at all.  Although the complaint and

the plaintiff's affidavit contain several conclusory statements that the plaintiff was qualified,

mere conclusions, unsupported by "specific facts" are "far from the competent evidence setting

forth specific facts [the] plaintiff needs to provide in order to withstand summary judgment."

*Mills v. Winter,* 540 F. Supp. 2d 178, 189 (D.D.C. 2008).  Even where a plaintiff offers facts to

support his claim, the hurdle is a high one.  "[B]ecause courts do not serve as super-personnel

departments that reexamine an entity's business decisions, a plaintiff asserting that an employer's

explanation is pretextual based upon comparative qualifications faces a formidable task."

*Pearsall v. Holder,* 610 F. Supp. 2d 87, 100 (D.D.C. 2009) (internal quotation marks, alterations,

and citations omitted).  Therefore, "to justify an inference of discrimination, the qualifications

gap must be great enough to be inherently indicative of discrimination."  *Esquibel v. LaHood,*

604 F. Supp. 2d 133, 138 (D.D.C. 2009) (internal quotation marks omitted).  Furthermore, the

plaintiff has not established, as he is required to do, that the position remained open and the

---

    [8]  The more generic formulation of the requirements of a prima facie case in *Wiley v. Glassman,* 511 F.3d 151, 155 (D.C. Cir. 2007), upon which the plaintiff relies, *see* Opp'n at 8, is not inconsistent with the formulation quoted here.  The formulation quoted here merely provides additional guidance as to what circumstances give rise to an inference of discrimination in the context of a refusal to hire or promote.

employer continued to "seek applications from persons of [plaintiff's] qualifications." *Brady v. Office of the Sergeant at Arms,* 520 F.3d at 493 n.1.  The complaint states only that the position remained vacant as of August 4, 2005 — a mere three weeks after the plaintiff submitted his application.  Compl. ¶ 38.

Similarly, the record affords no reasonable inference of discrimination that may be derived from the fact that the plaintiff was not selected for any of the three positions he applied for on January 27, 2006.  *See* Compl. ¶¶ 42, 46, 50.  Just three weeks after the plaintiff submitted his application, he declined to meet with his managers on February 17, 2006, and instead took unapproved leave, failed to return to work or to respond as requested by his employer, and soon thereafter was terminated.  On this record, it cannot be said that the plaintiff has made a prima facie case of discrimination in refusing to hire or promote him.  Therefore, summary judgment will be entered against the plaintiff on the discrimination claims arising from a failure to hire or promote.

### E.  The Plaintiff's Equal Pay Act Claim

"The Equal Pay Act prohibits payment of unequal wages for equal work on grounds of sex, unless the difference is justified by one of four enumerated defenses: a seniority system, a merit system, a system that measures pay by quality or quantity of production, or any other factor not based on sex." *Thompson v. Sawyer,* 678 F.2d 257, 263 (D.C. Cir. 1982) (citing 29 U.S.C. § 206(d)).

> To establish a prima facie violation of the Equal Pay Act, [a plaintiff must] show by a preponderance of the evidence that [he or] she was discriminated against on the basis of sex in [his or] her pay.  Particularly, [he or] she [must] show that: (1) [he or] she was

> . . . doing substantially equal work on a job, the performance of
> which required substantially equal skill, effort, and responsibility
> as jobs held by members of the opposite sex; (2) the job was
> performed under similar working conditions; and (3) [he or] she
> was paid at a lower wage than members of the opposite sex doing
> equal work.

*Nyman v. Fed. Deposit Ins. Corp.*, 967 F. Supp. 1562, 1577 (D.D.C. 1997) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188 (1974)). *See also Boumehdi v. Plastag Holdings LLC,* 489 F.3d 781, 793 (7th Cir. 2007); *Byrd v. Ronayne*, 61 F.3d 1026, 1033 (1st Cir. 1995); *Goodrich v. Int'l Brotherhood of Electrical Workers, AFL-CIO,* 712 F.2d 1488, 1491-92 (D.C. Cir. 1983) ("To establish a prima facie case under the Act, a plaintiff must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'") (quoting 29 U.S.C. § 206(d)(1) (1976)). A prima facie case is one which, if unrebutted, tends to establish the disputed fact. *See Carter v. City of Miami,* 870 F.2d 578, 583 (11th Cir. 1989) (stating, in a discrimination case, that "[t]he inquiry is whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted"); *Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1220 (4th Cir. 1976) (stating that a prima facie showing "subject[s] the opposing party to the risk of nonpersuasion if the evidence as to the disputed fact is left unrebutted"); *Grier v. Partek,* 903 F. Supp. 1480, 1486 n.5 (M.D. Ala. 1995) (quoting the formulation of the inquiry stated in *Carter v. City of Miami,* 870 F.2d at 583).

As noted earlier, at the summary judgment stage a "party may not merely rely on allegations . . . in its pleadings," but must "set out specific facts" through affidavits, declarations, deposition excerpts or other competent evidence "showing a genuine issue for trial." Fed. R.

Civ. P. 56(e)(2).  And "where the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party, there is no genuine issue for trial."  *Scott v. Harris,* 550 U.S. at

380 (internal quotation marks omitted).  In this case, the plaintiff has not satisfied the

requirement for a prima facie showing by submitting evidence sufficient to allow a trier of fact to

rule in his favor.  Defendants therefore are entitled to summary judgment.

   The plaintiff's sole evidence in support of his Equal Pay Act claim comes from

his affidavit, in which he states only that two of his female co-workers were "promoted . . . to

permanent positions in Grade [13]" while he remained in a temporary Grade 12 position,

"although all three of us continued to perform the same Contract Specialist duties of procurement

contract administration and negotiation on behalf of DCPS."  Smith Aff. ¶ 25; *see id*. ¶¶ 26, 41.

Without more, this non-specific, conclusory assertion, even though made under penalty of

perjury, falls short of establishing by a preponderance of the evidence that, compared to his

colleagues, the plaintiff was doing "substantially equal work on a job, the performance of which

required substantially equal skill, effort, and responsibility."  *Nyman v. Fed. Deposit Ins. Corp.,*

967 F. Supp. at 1575.  Such a "lack of evidence . . . foredoom[s an] Equal Pay Act claim."  *Byrd

v. Ronayne,* 61 F.3d at 1034.  The record in this case does not include a description of the skills

and effort required for the plaintiff's and comparators' jobs, or the attendant responsibilities.  *Cf.

Nyman v. Fed. Deposit Ins. Corp.,* 967 F. Supp. at 1576 (contrasting that plaintiff's position with

several of her male co-workers' with respect to the number of subordinates each supervised, the

extent of responsibilities for each, the specific skill level for each, and the working conditions for

each).  Nor does the record in this case establish what the plaintiff's female colleagues actually

were paid, but only the average salary (presumably the midpoint) of the Grade 13 salary scale.

*See* Smith Aff. ¶ 25; *cf. Nyman v. Fed. Deposit Ins. Corp.,* 967 F. Supp. at 1576 (contrasting that plaintiff's wages with the wages paid to several of her individual male peer co-workers).  The record before the Court in this case, taken as a whole, is insufficient to lead a rational trier of fact to find for the plaintiff on his claim under the Equal Pay Act.  The Court therefore will grant summary judgment for the defendants with respect to this claim as well.

## IV.  CONCLUSION

For the reasons stated, the defendants' motion for judgment will be granted with respect to the plaintiff's Title VII, ADEA, ADA, and Equal Pay Act claims.  His Section 1981 claim will be dismissed for failure to state a claim upon which relief may be granted, and the case will be dismissed.  All other pending motions will be denied as moot.  An Order consistent with this Opinion will be issued this same day.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  August 24, 2009